1  UNITED STATES DISTRICT COURT
2  DISTRICT OF PUERTO RICO

3  ROBERTO REYES-PEREZ,

4      Plaintiff,                                    Civil No. 11-1070 (JAF)

5      v.

6  STATE INSURANCE FUND, et al.,

7      Defendants.

8

9

10                        **<u>OPINION AND ORDER</u>**

11      Plaintiff Roberto Reyes-Pérez ("Plaintiff") brings this action against Defendants,

12  Puerto Rico's State Insurance Fund Corporation ("SIFC") and several of its officers.

13  (Docket No. 1 at 2–3.)  Plaintiff alleges violations of his rights under the First, Fifth, and

14  Fourteenth Amendments of the U.S. Constitution.  (<u>Id.</u>) Plaintiff also brings supplemental

15  claims under various Commonwealth statutes, including P.R. Law No. 100, of June 30,

16  1959, as amended, 29 L.P.R.A. § 146 <u>et seq.</u> ("Law 100"); P.R. Law No. 115, of December

17  20, 1991, as amended, 29 LPRA §§ 146–151 ("Law 115"), as well as Articles 1802 and

18  1803 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 and § 5142; and the Constitution of

19  Puerto Rico.  (Docket No. 1 at 2.)  Defendants move for summary judgment under Federal

20  Rule of Civil Procedure 56 (Docket Nos. 33; 34), Plaintiff opposes (Docket No. 43),

21  Defendants respond (Docket No. 52), and Plaintiff replies (Docket No. 60).

Civil No. 11-1070 (JAF)                                                                    -2-

## I.

## **Factual Synopsis**

We derive the following facts from the parties' motions and responses, statements of uncontested material facts, and exhibits.  (Docket Nos. 34; 34-46; 43; 43-1; 43-2; 52; 52-1; 60.)

We note at the outset that Plaintiff has largely failed to comply with the applicable rules governing summary judgment practice in this district.  On many critical matters in this case, "Plaintiff's denials and qualifications are either irrelevant to the matter at hand, add facts that should have been filed in a separate statement, or consist of mere 'speculation, generalities, conclusory assertions, improbable inferences, and, for lack of a better phrase, a lot of 'hot air.'"[1]   Gomez-Gonzalez v. Rural Opportunities, Inc., 658 F.Supp. 2d 325, 336 n.16 (D.P.R. 2009) (quoting Dominguez v. Eli Lilly and Co., 958 F.Supp. 721, 738 (D.P.R. 1997)).

---

[1] For example, Plaintiff denies Defendants' SUF ¶ 27, which reads: "On January 14, 2009, the SIFC's organizational structure was reverted, by the current Administrator, with the approval of the SIFC's Board of Directors, to the organizational structure that was in place in April 1, 2005, prior to the revised organizational structure that was approved during the incumbency of the former Administrators."  (Docket No. 34-46 at 8.) Plaintiff replies to this statement with the following statement: "Defendants' SUF No. 27 is denied. Plaintiff denies that the SIFC's organizational structure was ever reverted, since, Plaintiff nor any other managerial employees were formally informed of such change.  See Plaintiff's SUF No. 23."  (Docket No. 43-2 at 5.) There are at least two ways in which Plaintiff's denial does not "properly controvert" Defendants' statement. (D.P.R.R. 56(e); see also Docket No. 52-1 at 16.)  First, Plaintiff's denial fails a basic test of logic: the allegation that Plaintiff was never told of the organizational reversion does not mean that the reversion did not happen.  Second, Plaintiff's denial does not refer to "record material properly considered on summary judgment."  D.P.R.R. 56(e).  Instead of referring to the original record material that controverts Defendants' statement, Plaintiff's denial cites its own "Statement of Uncontested Facts."  Moreover, the "Statement of Uncontested Facts" that Plaintiff cites to is itself controverted, properly, by Defendants.  Many of Plaintiff's denials of Defendants' statements suffer from the same defects, see, e.g., notes 4, 9, infra.

1    After an exhaustive examination of Plaintiff's responses, (Docket Nos. 43; 43-1; 43-

2  2), we find that Plaintiff has failed to contest Defendants' statements of uncontested facts

3  properly under Local Rule 56(c) and (e), which require the nonmoving party to submit a

4  "separate, short, and concise statement of material facts [that] shall admit, deny or qualify

5  the facts supporting the motion for summary judgment . . . . [they] shall support each denial

6  or qualification by a record citation as required by this rule." D.P.R.R. 56(c).  For the most

7  part, Plaintiff's denials and qualifications lack proper record citations as required by Local

8  Rule 56(e), which requires inclusion of a "specific page or paragraph of identified record

9  material supporting the assertion." D.P.R.R. 56(e).  Instead of citing to original record

10  material, Plaintiff's denials cite his own "Statement of Uncontested Facts."   While

11  Plaintiff's separate "Statement of Uncontested Facts" does contain adequate record

12  citations, the First Circuit "has previously held that submitting an 'alternate statement of

13  facts,' rather than admitting, denying, or qualifying a defendant's assertions of fact

14  'paragraph by paragraph as required by Local Rule 56(c),'" does not meet the requirements

15  of the rule.  Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007)

16  (quoting Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007)).

17    Plaintiff's failure to comply with the rules has had several important consequences.

18  First, the Plaintiff's sloppy work has made the court's task of assembling facts exceptionally

19  difficult.  We have done our best to comb through hundreds of pages of the parties' exhibits

20  and records, connecting the dots from one docket entry to the next.  This type of painstaking

21  work, though, imposes a significant drain on our court's finite resources.  This burden is

Civil No. 11-1070 (JAF)                                                    -4-

1   especially acute in cases such as this, which present tangled questions of local law and

2   personnel regulations.  Even in a case with proper fact development, the First Circuit has

3   noted the "obvious difficulties" for courts' task of evaluating an employer's Mt. Healthy

4   defense.  Sanchez-Lopez v. Fuentes-Pujols, 375 F.3d 121, 126 (1st Cir. 2004).  In cases such

5   as this, the "trier of fact essentially becomes a kind of super-personnel board making

6   determinations about whether particular personnel actions violated state or local personnel

7   laws."  Id.  That task is made even more difficult by Plaintiff's failure to submit a proper

8   statement of contested facts.

9         Moreover, Plaintiff's failure to contest the issues properly has also had important

10  consequences for the parties.  On some issues, Plaintiff's failure to properly controvert

11  Defendants' facts has led us to deem certain of Defendants' properly supported statements

12  as admitted.[2]   Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004)

13  (affirming district court's decision to deem moving party's statements of facts admitted if

14  opposing party fails to controvert properly).  Still, we are mindful of the requirement that we

15  view the evidence in the light most favorable to Plaintiff on summary judgment.  Therefore,

16  we have done our best, where possible, to compile a set of facts from both parties'

17  statements and responses. (Docket Nos. 34; 34-46; 43; 43-1; 43-2; 52; 52-1; 60.)

18        Plaintiff is a Popular Democratic Party ("PDP") activist, who comes from a family of

19  well-known former public figures hailing from the PDP.  (Docket No. 43-1 at 2.)  A year

20  after his graduation from law school in 2001, Reyes went to work as legal advisor to then-

---

[2] See e.g., note 1, supra, and notes 4 and 9, infra.

Civil No. 11-1070 (JAF)                                                                        -5-

1   governor of Puerto Rico, PDP member Sila Calderón. (Id.)  Immediately following that

2   position, Plaintiff was offered a trust position as Contracting Director of the SIFC.  (Id.)

3   Plaintiff accepted the position in 2005.  (Id.)

4          In February 2008, the SIFC went through a large organizational restructuring.  (Id. at

5   3.)  In the restructuring, Plaintiff's position was reclassified from a trust to a career position.

6   (Id.)  Plaintiff's position, number 3034, was one of three positions that were reclassified at

7   the time from trust to career.  (Docket No. 34-46 at 9.)  These positions were: Associate

8   Director of Education and Development, position number 6733; Special Assistant I, position

9   number 3743; and finally, the position Plaintiff occupied of Contracting Director.  (Id. at

10  10.)

11         In the elections of November 2008, the New Progressive Party (NPP)--Puerto Rico's

12  other  major  political  party  and  PDP  rival--won  control  of  the  executive  branch  of

13  government in Puerto Rico.  (Docket No. 43-1 at 4.)  In January 2009, NPP activist Zoimé

14  Álvarez-Rubio ("Álvarez-Rubio") was appointed as Administrator of the SIFC. (Id.)  Soon

15  after her appointment, in January 2009, Álvarez-Rubio changed the organizational structure

16  back to the way it was in April 2005.[3]  (Docket No. 34-46 at 10.)  This "reversion" had the

17  blessing of SIFC's board.  Id.

_____

[3] The parties refer to this action as a "reversion."  Plaintiff's attempt to deny this fact fails, as we explain in
note 1, supra.

1    Álvarez-Rubio also ordered a comprehensive investigation of all of the SIFC's

2    personnel transactions that were carried out from January 1, 2001, to December 31, 2008.[4]

3    (Id.)  The purpose of the investigation was to ensure that all of the personnel transactions

4    had complied with applicable human resources procedures, in particular the "merit

5    principle."[5] (Id. at 10-11.)  The "merit principle," which seeks to ensure open competition

6    for positions at the SIFC, finds expression in various internal regulations of the SIFC

7    Employee Manual, and is mandated by Puerto Rico law, 3 L.P.R.A. § 1461.  (Id. at 10-14.)

8    Álvarez-Rubio delegated this investigation to Mr. Saúl Rivera-Rivera ("Rivera"),

9    then Director of the Human Resources Department.[6]  (Id. at 11.)  During the investigation,

10   Rivera and his team reviewed the personnel files for every single employee of the SIFC,

11   which amounted to 3,835 personnel files.   (Id.)   The investigation concluded that 232

12   personnel files contained personnel transactions that violated Article 14.1 of the SIFC's

13   Employee Manual, because the positions were filled through internal announcements rather

14   than through a competitive process open to outsiders.  (Id.)

15   During 2009, the SIFC also conducted a second investigation of personnel

16   transactions.  (Id.)  This second investigation focused on whether the reclassifications of the

---

[4] The parties dispute this fact, Defendants' SUF ¶ 28, at various levels.  (Docket No. 34-46 at 8; 43-2 at 5; 52-1 at 17.)   Again, Plaintiff's denial fails to "properly controvert" Defendants' statement for several reasons.  (Docket No. 43-2 at 5.)  First, in support of his denial, Plaintiff cites to his own "Statement of Uncontested Facts" instead of to original record material.  Second, the item that Plaintiff points to in his own "Statement of Uncontested Facts" is properly controverted by Defendants.  (Docket No. 52-1 at 108.)  Third, the underlying evidence that Plaintiff points to—his own statement that there was never any official communication of the "reversion"—does not contradict Defendants' claim regarding the audit.

[5] Plaintiff denies this fact, again improperly.  See note 4, supra.  (Docket No. 43-2 at 5.)

[6] Plaintiff denies this fact, Defendants' SUF ¶ 29, again improperly.  (Docket Nos. 43-2 at 5; 52-1 at 17-18.) We deem it admitted.

1   three earlier mentioned positions from trust to career were valid under existing procedures.[7]

2   To conduct this investigation, the SIFC hired a human resources management consultant,

3   Mr. José Miguel Álvarez ("Miguel").  (Id. at 12.)  After investigating the reclassifications

4   and analyzing the relevant procedures, Miguel provided three reports submitting his expert

5   opinion on the matter.  His conclusion was that all three reclassifications were in direct

6   violation of the merit principle.[8]  (Id.)

7        Miguel then prepared a report ("Audit Report" or "Report") that summarized his

8   findings and recommended appropriate actions.  The Report explained in detail why all of

9   the three reclassifications in question had violated the SIFC Employee Manual.[9]  (Id.)  The

10  Audit Report also recommended that each of these transactions be annulled.  (Id.)  Miguel

11  gave the Audit Report to Rivera in his capacity as Director of Human Resources, who then

12  gave the Report to Álvarez-Rubio.  (Id.)

---

[7] Defendants maintain that they began this investigation after various employees and employee organizations complained about the reclassifications made during the previous administration.  (Docket No. 34-46 at 11.) The complaints were filed before the SIFC Board of Appeals, by several managerial employees, the Federation of Managerial Employees of the SIFC, and the Association of Managerial Employees of the SIFC. (Id.)

[8] Article 9.5 of the SIFC's Employee Manual governs the reclassifications of positions from trust to career and career to trust. In order to preserve the so-called "merit principle," reclassifications from trust to career positions are authorized only when there is a change in the position's functions or when there is a change in the corporation's organizational structure. Article 9.5 further states that if the position is occupied, the position can be reclassified from trust position to a career position only if the employee occupying the position at the time complies with the following conditions: (1) meets the established requirements for the position's class; (2) has occupied the position for no less than the term provided for the probationary period of said position's class; (3) has passed the exam required for the position's class; and (4) the employee's services have been satisfactory, as certified by the Administrator. (Docket No. 34-46 at 10-11.)

[9] Docket No. 52-1 at 21-23, 37-38.

Civil No. 11-1070 (JAF)                                                                -8-

1    After reviewing the Audit Report, Álvarez-Rubio approved the Report's

2    recommendations.  (Id. at 17.)   Thereafter, the Human Resources Department began

3    notifying all of the employees who would be affected.  (Id. at 18.)

4    On March 26, 2010, Plaintiff received a letter notifying him of the Administrator's

5    intent to nullify the personnel transaction that had reclassified his position as a career

6    position.   (Id.)   The letter explained that because the position Plaintiff held before the

7    reclassification was a trust position, Plaintiff had no right to be reinstated to the position.

8    (Id.)   The letter further informed him of his right to request an administrative informal

9    hearing before an Official Examiner.  (Id.)

10    On April 8, 2010, Plaintiff exercised that right by requesting an administrative

11    informal hearing.  (Id.)  On the same day, Plaintiff was informed that his hearing would be

12    scheduled for April 23.  (Id.)  The following week, on April 16, Plaintiff was informed that

13    a copy of his personnel file would be available for pick up on or before April 20.  (Id.)

14    According to Plaintiff, his personnel file was only made available to him on the day of the

15    hearing, April 23.  (Docket No. 43-1 at 5.)  On that day, the administrative hearing was held,

16    and Plaintiff admits he was afforded the opportunity to present his position on the matter.

17    (Id. at 19.)

18    On April 27, 2010, the Official Examiner who presided over Reyes' informal hearing

19    informed Plaintiff of her decision.  (Id.)  The Examiner agreed that the reclassification of

20    Plaintiff's position from a trust position to a career position violated applicable laws and

1  regulations.    (Id.)Therefore,  the  Examiner  recommended  to  Álvarez-Rubio  that  the

2  reclassification of Plaintiff's position from trust to career be nullified.  (Id.)

3         On April 30, 2010, after having reviewed the Official Examiner's decision, Álvarez-

4  Rubio notified Plaintiff of her final determination.  (Id.)  In a letter, Álvarez-Rubio informed

5  Plaintiff  that  she  was  adopting  the  Official  Examiner's  decision  and  nullifying  the

6  reclassification  of  his  position.    (Id.)   Having  no  right  to  reinstatement,  Plaintiff  was

7  permanently separated from the career service of the SIFC's managerial employees and,

8  therefore, dismissed.   (Id.)   The letter also advised Plaintiff of his right to appeal the

9  Administrator's decision before the SIFC's Board of Appeals.   (Id.)   Plaintiff did not,

10  however, appeal the decision to the SIFC's Board of Appeals. (Id.)

11         After  Plaintiff's  reclassification  was  nullified,  Alvarez-Rubio  returned  the

12  Contracting Area to its previous status, under the direct supervision of the Administrator.

13  (Id. at 20.)  Plaintiff's former position of Contracting Director was also returned to its

14  original trust classification.[10]  (Id.)

15

16                                          **II.**

17                        **Summary Judgment Under Rule 56**

18         We must grant a motion for summary judgment "if the pleadings, the discovery and

19  disclosure materials on file, and any affidavits show that there is no genuine dispute as to

---

[10] Plaintiff denies this, again improperly, by providing an assertion that in no way contradicts Defendants'
statement, and by citing to his own Statement of Uncontested Facts instead of to original record material.
(See Docket No. 52-1 at 42-44.)

1   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

2   P. 56(a).  A factual dispute is "genuine" if it could be resolved in favor of either party and

3   "material" if it potentially affects the outcome of the case.  Calero-Cerezo v. U.S. Dep't of

4   Justice, 355 F.3d 6, 19 (1st Cir. 2004).

5         The movant carries the burden of establishing that there is no genuine dispute as to

6   any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The movant may

7   satisfy this burden by "citing to particular parts of materials in the record, including

8   depositions, documents, electronically stored information, affidavits or declarations, . . . or

9   other materials."  Fed. R. Civ. P. 56(c)(1)(A).  Furthermore, to establish the absence of a

10  genuine dispute of material fact, the movant need not produce evidence but may instead

11  point to a lack of evidence supporting the nonmovant's case.  See Fed. R. Civ. P.

12  56(c)(1)(B); see also Celotex, 477 U.S. at 325.  "Once the moving party has made a

13  preliminary showing that no genuine [dispute] of material fact exists, the nonmovant must

14  produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy

15  [dispute]."  Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks

16  omitted); see also Fed. R. Civ. P. 56(c)(1).

17        In evaluating a motion for summary judgment, we must view the record in the light

18  most favorable to the nonmovant.  See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133,

19  150–51 (2000).  "The court need consider only the cited materials, but it may consider other

20  materials in the record."  Fed. R. Civ. P. 56(c)(3).

1                                                        **III.**

2                                                   **Analysis**

3          Defendants argue that they are entitled to summary judgment on each of Plaintiffs'

4    claims.  (Docket Nos. 33; 52.)  We agree, and for the reasons discussed below, dismiss the

5    Complaint in its entirety.

6    **A.      First Amendment Claim**

7          The parties here dispute whether Plaintiff has made a prima-facie case of political

8    discrimination.  (Docket Nos. 33; 43.)  Without deciding this question, we note that Plaintiff

9    has presented considerable evidence of a highly-charged political environment at the SIFC

10   following the elections of 2008.  (Docket No. 43-1.)  We assume, without deciding, that

11   Plaintiff has proven a prima-facie case of political discrimination, and proceed instead to the

12   dispositive question of whether Defendants have presented a winning <u>Mt. Healthy</u> defense,

13   <u>see</u> <u>Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274 (1977).  We do this for the

14   following reason:

15              [E]ven if a jury could reasonably conclude from the summary-judgment
16              evidence that [Plaintiff's] political affiliation was a substantial or motivating
17              factor in their decisional calculus, he still would not be home free. The
18              defendants could still meet their summary-judgment burden by showing that
19              no sensible jury would reject their defense that they would have taken the
20              same action against him in the absence of the protected conduct. . . . This is
21              what is known as a Mt. Healthy Defense.
22
23   <u>Soto-Padro v. Public Bldgs. Auth.</u>, 675 F.3d 1, 5 (1st Cir. 2012) (internal quotations and

24   citations omitted).

1      Defendants argue that they are entitled to summary judgment based on their <u>Mt.</u>

2  <u>Healthy</u> defense.  (Docket No. 34 at 2.)  We agree.

3      Defendants have established that the reason behind plaintiff's dismissal was the

4  violations of rules and regulations of the SIFC, particularly Article 9.5 of the SIFC

5  Employee Manual.[11]  (Docket Nos. 34; 34-46.)  Still, as the First Circuit has noted, "simply

6  showing that an appointment was illegal under local law does not suffice to meet

7  defendants' Mt. Healthy burden."  <u>Sanchez-Lopez</u>, 375 F.3d at 133.  Additional factors

8  gleaned from First Circuit case law convince us that Defendants have met their burden in

9  this case.

10     For one, the personnel investigations that formed the basis for Álvarez-Rubio's

11 actions affected members of both parties: PDP and NPP sympathizers alike.  For example,

12 one of the persons whose appointment was annulled as a result of Álvarez-Rubio's

13 investigations was codefendant Rivera, an NPP supporter.  (Docket No. 34-46 at 17.)  <u>See</u>

---

[11] Defendants have shown that Plaintiff did not satisfy the requirements of Article 9.5 of the SIFC Employee Manual.  (Defendants' SUF ¶ 39, Docket No. 34-46 at 13-14.)  Plaintiff's denial, (Docket No. 43-2 at 6), fails to properly controvert this crucial fact.  Even looking past that flaw, however, Plaintiff has failed to controvert Defendants' subsidiary demonstrations that he was unqualified for the position.  To take one example, Plaintiff agrees that the career position of Contracting Director requires five years of contracting experience, three of which should include supervision.  (Defendants' SUF ¶ 53.)  Defendants show that Plaintiff did not have the requisite five years of contracting experience.  (Defendants' SUF ¶ 54.)  Plaintiff denies this fact by saying that documents were missing in his personnel file, which "are part of the information that certified that Plaintiff qualified for the position. See Plaintiff's SUF No. 60."  (Docket No. 43-2 at 8.)  This denial is both procedurally flawed, in that it cites to his own statement instead of original record material, and it is non-responsive.  The fact that a piece of paper is missing from a file does not controvert Defendants' statement that Plaintiff lacked the requisite experience for the position.  Defendants have cited several pieces of record evidence in support of their contention that Plaintiff did not possess the requisite five years of experience in contracting goods and services.  (Docket Nos. 34-46 at 13-14, 16; 52-1 at 26-29.)  Plaintiff has failed to properly controvert this statement.  We remind Plaintiff that we have no independent duty to do his job of searching the record to controvert Defendants' assertions of fact.

Civil No. 11-1070 (JAF)                                                                -13-

1   Soto Padro, 675 F.3d at 5 (noting that the "people affected included NPP and PDP

2   sympathizers").

3          Second, the investigations focused on "positions not persons." Soto-Padro, 675 F.3d

4   at 5. The Audit Report itself identified the positions according to their number, giving

5   specific reasons independent of politics for why the reclassifications were improper.

6   (Docket No. 34-46 at 11-12.)

7          Third, the reversion of the SIFC's organizational structure that Álvarez-Rubio

8   effected had the "blessing of [SIFC's] governing board," (Docket No. 34-46 at 10), and the

9   audit and restructuring were "entity-wide–in other words, it was not one that was targeted

10  exclusively at [Plaintiff's] particular corner" of the SIFC. Soto-Padro, 675 F.3d at 5. The

11  investigations that Alvarez Rubio undertook extended to every single personnel file at the

12  SIFC—more than 3,800 employees. (Docket No. 34-46 at 10-11.)

13         In these respects, this case is unlike those in which the First Circuit has found the

14  "real motives" of defendants' reorganization plans questionable. Soto-Padro, 675 F.3d at 5.

15  Unlike in Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 78 (1st Cir. 2000), for

16  example, here the restructuring affected several positions, not just one. Id. Nor was there

17  any evidence in this case that the personnel actions were taken "against members of the

18  opposing party but not against similarly situated members of defendants' own party."

19  Sanchez-Lopez, 375 F.3d at 126 (citing Acevedo-Garcia v. Vera-Monroig, 204 F.3d 1, 10-

20  11 (1st Cir. 2000)).

Civil No. 11-1070 (JAF)                                                          -14-

1    As the First Circuit has made clear, "even if a plaintiff shows an impermissible

2    political motive, he cannot win if the employer shows that it would have taken the same

3    action anyway, say, as part of a bona fide reorganization." Soto-Padro, 675 F.3d at 5 (citing

4    Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 706 n.4 (1st Cir. 1993)).  That is what

5    happened here: The summary judgment record shows that "defendants still would have

6    reclassified [Plaintiff's] position even if he were an [NPP] member, which means that they

7    have sufficiently established a Mt. Healthy defense." Id.

8        The First Circuit has noted that, at times, in Puerto Rico, "the outgoing party attempts

9    to secure the continued tenure of its members in public jobs through a variety of devices,

10   such as reclassifying policy-type appointments as career positions." Morales-Santiago v.

11   Hernandez-Perez, 488 F.3d 465, 467 (1st Cir. 2007) (quoting Sanchez-Lopez, 375 F.3d at

12   125 (1st Cir. 2004)).  That appears to be what happened here: Just months before the

13   elections in 2008, Plaintiff's position was reclassified from a trust to a career position,

14   despite the fact that he was under-qualified, per SIFC rules and regulations, for the position.

15   This was just the sort of personnel transaction that Alvarez-Rubio's investigations were

16   designed to root out.  (Docket No. 34-46 at 10-11.)  We reject Plaintiff's attempt to label

17   this type of house cleaning unconstitutional political discrimination.  For the foregoing

18   reasons, Plaintiff's claims under the First Amendment will be dismissed.

19   **B.    Due Process**

20       Defendants argue that they are entitled to summary judgment on Plaintiff's due

21   process claim.  (Docket No. 34 at 30-34.)  Plaintiff's response, to the extent we can

22   understand it, is that his pre-termination hearing should have provided him with "a

1    meaningful opportunity to respond [to] and challenge the alleged illegality of his

2    appointment."   (Docket No. 43 at 33.)   On this record, we find that Plaintiff's pre-

3    termination hearing was sufficient for constitutional due-process standards.  We, therefore,

4    grant Defendants summary judgment on this claim.

5          Due process requires that a deprivation of property "be preceded by notice and

6    opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v.

7    Loudermill, 470 U.S. 532, 542 (1985) (quoting Mullane v. Cent. Hanover Bank & Trust

8    Co., 339 U.S. 306, 313 (1950)).   State employees holding a legally-protected property

9    interest in their employment generally must be given a pre-termination hearing before they

10   are dismissed for cause.  See id.; Whalen v. Mass. Trial Court, 397 F.3d 19, 25 (1st Cir.

11   2005).  A hearing is not required, however, where a "reorganization or other cost-cutting

12   measure" was the cause of the employees' dismissal.  Whalen, 397 F.3d at 24.

13         In this case, we think that due process required plaintiff be given "some kind of

14   hearing" before he was terminated.[12] Loudermill, 470 U.S. at 482.  As a career employee,

15   Plaintiff had a protected property interest in continued employment.  Rodriguez-Sanchez v.

16   Municipality of Santa Isabel, 658 F.3d 125, 129 (1st Cir. 2011).

17         Having established that due process applies, "the question remains what process is

18   due." Loudermill, 470 U.S. at 541 (quoting Morrissey v. Brewer, 408 U.S. 471, 481

---

[12] We reject Defendants' argument that because Plaintiff's termination was a "random and unauthorized deprivation," no pre-deprivation hearings were required.  The "reorganization exception" does not apply here, because the decision to terminate Plaintiff had to do with his individual qualifications for the career position.  Whalen, 397 F.3d at 24.  Therefore, this case is unlike those in which a pre-deprivation hearing would have been idle. See id.

1   (1972)).  The Supreme Court has made clear that "the pre-termination hearing need not

2   definitively resolve the propriety of the discharge, but need only be 'an initial check against

3   mistaken decisions—essentially, a determination of whether there are reasonable grounds to

4   believe that the charges against the employee are true and support the proposed action." Id.

5   at 545-46.  "This pre-termination process, especially when there is a 'comprehensive' post-

6   termination procedure in place, need not be elaborate." Calderon-Garnier v. Rodriguez, 578

7   F.3d 33, 38 (1st Cir. 2009) (internal quotations and citations omitted).  To be adequate, the

8   pre-termination hearing "need only include oral and written notice of the charges, an

9   explanation of the employer's evidence, and an opportunity for the employee to tell his side

10  of the story." Id. (quoting Gilbert v. Homar, 520 U.S. 924, 929 (1997)).

11          On this record, we think that the process given Plaintiff was sufficient.  In advance of

12  the pre-termination hearing, Plaintiff received written notice of the SIFC's decision to annul

13  the reclassification.  He then participated in an informal hearing in which he admits that he

14  had an opportunity to tell his side of the story.  (Docket No. 34-46 at 18-20.)  At this stage,

15  no more was required to satisfy due process. Gilbert, 520 U.S. at 929.

16  **C.      Supplemental Claims**

17          The Supreme Court has stated that "if the federal claims are dismissed before trial,

18  . . . the state claims should be dismissed as well." United Mine Workers v. Gibbs, 383 U.S.

19  715, 726 (1966).  This is not a "mandatory rule to be applied inflexibly in all cases."

20  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).  "Rather, a district court

21  must exercise 'informed discretion' when deciding whether to exercise supplemental

22  jurisdiction over state law claims." Redondo Constr. Corp. v. Izquierdo, 662 F.3d 42, 49

Civil No. 11-1070 (JAF)                                                                    -17-

1   (1st Cir. 2011) (quoting <u>Roche v. John Hancock Mut. Life Ins. Co.</u>, 81 F.3d 249, 256–57

2   (1st Cir. 1996)).  This decision involves a weighing of various factors, including comity,

3   judicial economy, convenience, and fairness.  <u>Id.</u> (internal citations omitted).

4         Having considered these factors, we decline to exercise supplemental jurisdiction

5   over Plaintiff's Puerto Rico law claims.  Both parties have focused their efforts here on the

6   federal claims; the Puerto Rico law issues have received much less attention.  Moreover, the

7   remaining issues in this case concern delicate and complicated questions of Puerto Rico law.

8   Many of the cases of other plaintiffs terminated by the SIFC are currently working their way

9   through the Commonwealth courts.  In the interests of comity, we think that Puerto Rico's

10  own courts are best positioned to handle the resolution of the Puerto Rico law claims.

11        Accordingly, those supplemental Commonwealth claims are dismissed without

12  prejudice pursuant to 28 U.S.C. § 1367(c)(3).

13                                            **IV.**

14                                      <u>**Conclusion**</u>

15        For the foregoing reasons, we hereby **GRANT** Defendants' motion for summary

16  judgment (Docket No. 33).  We **DISMISS WITH PREJUDICE** Plaintiff's federal claims,

17  and we **DISMISS WITHOUT PREJUDICE** Plaintiff's supplemental Commonwealth law

18  claims.

19        **IT IS SO ORDERED.**

20        San Juan, Puerto Rico, this 12th day of October, 2012.

21                                  s/José Antonio Fusté
22                                  JOSE ANTONIO FUSTE
23                                  United States District Judge